```
                                                        USDC SDNY
                                                        DOCUMENT
UNITED STATES DISTRICT COURT                            ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                           DOC #:_____
------------------------------------------------------ X   DATE FILED: 12/9/2014
JUSHUA PREVOST,                                      :
                                                     :
                                                     :
                                    Plaintiff,       :   13-CV-3760 (VEC)
                                                     :
                 -against-                           :   OPINION & ORDER
                                                     :
CITY OF NEW YORK, POLICE OFFICER                     :
VANITY MEDINA, and NYPD,                             :
                                                     :
                                                     :
                                    Defendants.      :
------------------------------------------------------ X
```

VALERIE CAPRONI, District Judge:

Plaintiff Jushua Prevost has sued New York City (the "City"), the New York City Police Department ("NYPD") and an individual police officer pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights arising out of his arrest in 2010. Defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and for sanctions pursuant to Fed. R. Civ. P. 11. For the reasons set forth below, Defendants' motion for judgment on the pleadings is GRANTED in part and DENIED in part; their motion for sanctions is DENIED.

## FACTUAL BACKGROUND

On October 9, 2010, Plaintiff stopped at a bodega in the Bronx on his way home from work. Compl. ¶ 13. Inside the store, he observed two men arguing and attempted to intervene. *Id.* ¶ 14. One of the men, who was later identified as Robert Campbell, told him to "mind his own business," and then attacked Plaintiff with a knife. *Id.* Plaintiff protected his face with his left forearm and was cut. *Id.* ¶ 15. Plaintiff called 911 from his cell phone to report the assault. *Id.* ¶ 16. As Plaintiff was on the phone with the 911 operator, Campbell fled the bodega on foot.

*Id.* Plaintiff gave chase. *Id.* He caught and "subdued" Campbell about one and a half blocks away and "prevented him from escaping until the police arrived." *Id.* ¶ 17. When the police arrived, Plaintiff relayed this version of events to them. *Id.*

One of the officers who arrived at the scene, Defendant Officer Vanity Medina, took Plaintiff to a hospital for treatment of the cut to his arm. *Id.* ¶ 19. Other police officers interviewed witnesses at the bodega who corroborated Plaintiff's version of events – that Campbell attacked Plaintiff with a knife without provocation. *Id.* ¶ 17.[1] At approximately 9:50 p.m., after Plaintiff's wound had been stitched, Officer Medina arrested Plaintiff on multiple charges, including attempted murder in the second degree. *Id.* ¶¶ 18-19, 22. Plaintiff was arraigned on October 11, 2010, and denied bail. *Id.* ¶ 23. He was detained for four days before being released on October 15, 2010. *Id.* ¶ 24. On the application of the District Attorney's office, all charges were dismissed on November 4, 2010. *Id.* ¶ 25.

## ANALYSIS

### I.    Rule 12(c) Standard of Review

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). The Court must accept as true all material factual allegations in the Complaint and draw all reasonable inferences in the Plaintiff's favor. *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009). To survive a Rule 12(c) motion, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 44 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To

---

[1]    The Complaint does not specifically allege when the police interviewed the witnesses from the bodega. S*ee* Compl. ¶ 17. Drawing all reasonable inferences in the Plaintiff's favor, the Court presumes that those interviews occurred promptly, while Plaintiff was being treated at the hospital and prior to his arrest.

satisfy the "plausibility" requirement, a complaint must do more than make "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Rather, the elements of the cause of action must be supported by well-pleaded facts that permit the Court to infer "that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In evaluating whether a complaint crosses this threshold, the Court "must consider only those facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and items of which judicial notice may be taken." *Barnett v. Mount Vernon Police Dep't*, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Rule 12(d) mandates that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[T]he conversion of a Rule [12(c)] motion into one for summary judgment under Rule 56 when the court considers matters outside of the pleadings is strictly enforce[d] and mandatory." *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 203 (2d Cir. 2013) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154-55 (2d Cir. 2006)).

The pertinent "pleadings" here are the Complaint and the Answer. Fed. R. Civ. P. 7(a). Although "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), the pleadings in this case contain no exhibits, *see* Dkt. 1, Dkt. 10. A court may consider a document that is not attached as an exhibit to a pleading or incorporated by reference in the complaint if the complaint "'relies heavily upon [the document's] terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

The Second Circuit has emphasized that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Defendants' arguments in support of their motion to dismiss rely almost entirely on facts gleaned from the transcript of Plaintiff's examination pursuant to New York General Municipal Law § 50-h ("50-h Transcript"). *See* Def. Mem. at 2-4, 7-9, 12-18. Plaintiff's opposition to Defendants' motion for judgment on the pleadings adopted Defendants' statement of facts and incorporated additional facts from the 50-h Transcript in support of his position, Pl. Mem. at 3, but the transcript was not an exhibit to either the Complaint or the Answer.

District courts in this circuit regularly decline to consider 50-h Transcripts submitted in support of or in opposition to a motion to dismiss, even if neither party objects. *See, e.g.*, *Lacey v. Yates Cnty.*, --- F. Supp. 3d ---, No. 12-CV-6100(EAW), 2014 WL 2930466, at *3 (W.D.N.Y. June 27, 2014) (declining to consider a 50-h transcript because it was not incorporated by reference in the complaint); *Beck v. City of New York*, No 12-CV-9231(RA), 2014 WL 80544, at *3 n.4 (S.D.N.Y. Jan. 3, 2014) (declining to consider a 50-h transcript when the plaintiff referred to the hearing in her complaint but did not annex any portion of the testimony); *Fontanez v. Skepple*, No. 12-CV-1582(ER), 2013 WL 842600, at *3 (S.D.N.Y. Mar. 6, 2013), *aff'd*, 563 F. App'x 847 (2d Cir. 2014) (summary order) (declining to consider a 50-h transcript because only the defendants relied on the transcript); *Aguilera v. Cnty. of Nassau*, 425 F. Supp. 2d 320, 322-23 (E.D.N.Y. 2006) (declining to consider undisputed 50-h testimony submitted by the defendants despite the plaintiff's consent because the transcript was not incorporated by reference or attached to the complaint); *but see Vessa v. City of White Plains*, No. 12-CV-6989(ER), 2014 WL 1271230, at *4 n.11 (S.D.N.Y. Mar. 24, 2014) (considering a 50-h transcript on a motion to

dismiss when offered by the plaintiff because the examination was explicitly referenced in the complaint); *Dellate v. Great Neck Union Free Sch. Dist.*, No. 09-CV-2567(AKT), 2010 WL 3924863, at *4 (E.D.N.Y. Sept. 30, 2010), *aff'd*, 448 F. App'x 164 (2d Cir. 2012) (considering a 50-h transcript when both parties annexed relevant portions of the transcript in support of their respective arguments and when the 50-h examination had not yet occurred when the complaint was filed).

Notwithstanding Plaintiff's adoption of Defendants' statement of facts, because the 50-h Transcript was not a part of the pleadings, it cannot be relied on by the Defendants in making their present motion; accordingly the Court will not consider it when ruling on Defendants' motion for judgment on the pleadings.

## II.     Officer Medina

Defendants argue that Plaintiff fails to state claims for false arrest and malicious prosecution under Section 1983 because probable cause existed for Plaintiff's arrest and prosecution. Def. Mem. at 7-9, 12-13. Alternatively, Defendants argue that Officer Medina is entitled to qualified immunity on all claims because she had "arguable" probable cause for an arrest. Def. Mem. at 13-14.

"Probable cause is a complete defense to any action for false arrest or malicious prosecution in New York," *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010), and, by extension, a defense to liability under Section 1983. *See Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) ("a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law" to state a claim for malicious prosecution under Section 1983); *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (Sotomayor, J.) (courts "look[] to the law of the state in which the arrest occurred" to analyze 1983 claims for unconstitutional false arrests). "Under both federal and New York law, an

officer 'has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Garcia v. Does*, 764 F.3d 170, 177 (2d Cir. 2014) (quoting *Dickerson*, 604 F.3d at 751).

"When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)) (emphasis in *Panetta*). An "officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause," *id.* at 396, but "under some circumstances, a police officer's *awareness* of the facts supporting [a] defense can eliminate probable cause" under New York law, *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (emphasis added). It is well-settled that even though there is no duty to investigate defenses or unverified claims of justification offered by the arrestee before making an arrest, an officer is not permitted to "deliberately disregard" facts that establish justification. *Id.* at 135-36.

Even if an arrest is made without probable cause, a police officer is entitled to qualified immunity if she can establish that she had "arguable probable cause" to arrest the plaintiff. *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (citing *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also Escalera*, 361 F.3d at 743 (noting that "the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause" because "'arguable probable cause' will suffice to confer qualified immunity for the arrest."). "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's actions did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia*, 764 F.3d at 177 (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

The defendant bears the burden of establishing qualified immunity. *Id.* (citing *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013)).

"There is no doubt that the right to be free from arrest without probable cause was clearly established" when Plaintiff was arrested. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2007). Thus, the Court must determine whether it was "objectively reasonable" for Officer Medina to have concluded that probable cause to arrest Plaintiff existed. An officer's determination is objectively reasonable if there was "arguable" probable cause at the time of the arrest. *Id.* "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski*, 723 F.3d at 390 (quoting *Escalera*, 361 F.3d at 743).

In determining whether the officer's conduct was "objectively reasonable," the Court looks to "the information possessed by the officer at the time of the arrest, but [does] not consider the subjective intent, motives, or beliefs of the officer." *Garcia*, 764 F.3d at 177 (quoting *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)). An officer may have a "reasonable belief" that probable cause exists even if the officer also is aware of facts that create an *arguable* defense. *Id.* at 181. But "an officer may not disregard plainly exculpatory evidence." *Panetta*, 460 F.3d at 395 (citing *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. 2001)). "If a person cannot as a matter of law be guilty of a crime, an officer aware of the facts establishing the applicable defense cannot have probable cause to make an arrest." *Garcia*, 764 F.3d at 184. *See also Kerman*, 261 F.3d at 240-41 (reversing summary judgment on qualified immunity because it was unreasonable for the arresting officer to deliberately disregard exculpatory information).

Under New York law, justification is an exculpatory defense[2] that makes the use of force by a private person privileged under certain circumstances. If the required circumstances are present, conduct that would otherwise be criminal "is simply not criminal." *People v. McManus*, 67 N.Y.2d 541, 545 (1986). "[B]y recognizing the use of force to be privileged under certain circumstances, [the defense] renders such conduct entirely lawful." *Id.* at 546.[3]

Qualified immunity may be decided on a motion to dismiss "[p]rovided it turns on an issue of law," but "success on such a motion must be limited to situations where immunity is clear based on the allegations in the complaint itself." *Garcia*, 764 F.3d at 177, 180, 183 (citations omitted). As with all motions to dismiss, in determining whether qualified immunity can be decided at the pleading stage, the Court must accept as true the material facts alleged in

---

[2]  In *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003), the Second Circuit explained the distinction between an "exculpatory defense" and a "mitigating defense" as it relates to probable cause to arrest:

> Under New York law, defenses are either exculpatory (eliminating culpability) or mitigating (reducing culpability). *People v. Valles*, 62 N.Y.2d 36, 476 N.Y.S.2d 50, 464 N.E.2d 418, 419 (1984). Justification, including both emergency measures and self-defense, is an exculpatory defense. *Id.*; N.Y. Penal Law §§ 35.05, 35.15 (McKinney 1997). In *Valles*, the New York Court of Appeals held that exculpatory defenses must be presented to a grand jury, whereas mitigating defenses need not, because exculpatory defenses are relevant to the grand jury's role in "protect[ing] citizens from having to defend against unfounded accusations" to which there are complete defenses. *Valles*, 476 N.Y.S.2d 50, 464 N.E.2d at 419. Although a grand jury's decision of whether probable cause exists to indict is distinct from the probable cause determination of whether an arrest is privileged, the interest in protecting the public against improper arrests is parallel to the interest in protecting the innocent against the burden of answering to an indictment. Defenses which negate the existence of a crime should similarly negate probable cause.

316 F.3d at 135.

[3]  Under the New York Penal Law:

> A *private person* acting on his or her own account *may use physical force*, other than deadly physical force, upon another person when and to the extent that he or she reasonably believes such to be *necessary to effect an arrest or to prevent the escape from custody* of a person whom he or she reasonably believes to have committed an offense and who in fact has committed such offense; and may use deadly physical force for such purpose when he or she reasonably believes such to be necessary to [] [d]efend himself . . . from what he or she reasonably believes to be the use or imminent use of deadly physical force.

N.Y. Penal Law § 35.30(4) (McKinney's 2004) (emphasis added). *See also* N.Y. Penal Law § 35.10(6) ("The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal" if used "in order to effect an arrest or prevent an escape from custody.").

the complaint and draw all reasonable inferences in the plaintiff's favor.  At this procedural juncture, the defendant faces a "formidable challenge" to prevail on such grounds, particularly when the "arguable probable cause" inquiry turns on what the arresting officer knew or did not know regarding the facts that establish justification.  *Id.* at 182-83.

Officer Medina cannot establish that probable cause or "arguable probable cause" existed based solely on the facts alleged in the Complaint.  Accepting the factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Officer Medina knew that the police were called to the scene in response to a 911 call reporting an assault.  The officers were able to locate Plaintiff and Campbell a block and a half from the bodega because the victim of the assault told the 911 operator his location.  Upon arrival, Officer Medina found Plaintiff, with a serious cut to his arm, subduing Campbell.  Plaintiff told the police that Campbell had attacked him with a knife when he tried to break up an argument in the bodega and that he had chased Campbell when Campbell attempted to flee the scene of the crime.  In the time between the police officers' arrival and Officer Medina's arrest of Plaintiff, witnesses at the bodega corroborated Plaintiff's account – Campbell, unprovoked, attacked Plaintiff with a knife.

Based solely on these facts, the Court cannot decide as a matter of law that it was objectively reasonable for Officer Medina to conclude that there was probable cause to believe Plaintiff had committed a crime or that officers of reasonable competence would disagree about whether there was probable cause to arrest the Plaintiff.  Assuming the witnesses in the bodega were credible (which the Court must presume at this juncture), Plaintiff's situation fits squarely within New York law of justification.

Because it is entirely possible that Defendants will introduce evidence that contradicts the facts alleged in the Complaint or that will establish Officer Medina's ignorance of the alleged exculpatory evidence, the Court expresses no view on whether Officer Medina will ultimately be

9

entitled to qualified immunity.[4]  Defendants' motion for judgment on the pleadings as to Officer Medina is, however, DENIED.[5]

### III. NYPD

Plaintiff brings claims against the NYPD for supervisory liability.  In order to maintain a claim for supervisory liability under Section 1983, a plaintiff must plead that an official, through his or her own individual actions, violated the Constitution.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Because Plaintiff identifies no "supervisor" who did anything to harm Plaintiff and because the NYPD is not a suable entity, *Jenkins*, 478 F.3d at 93 n.19, Defendants' motion for judgment on the pleadings on the claims against the NYPD is GRANTED.

---

[4] Because qualified immunity is "both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation," *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009), the Supreme Court has advised that courts should resolve the question of qualified immunity at the "earliest possible stage in litigation," *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  Nonetheless, "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

[5] Even if the Court were to base its decision on a record that included Plaintiff's 50-h Transcript – which the Court notes revealed a much more robust use of force by Plaintiff than he acknowledges in the Complaint – there would still be a question of fact as to Officer Medina's knowledge of facts that would establish justification. Plaintiff was attacked with a knife and apprehended Campbell who fled from the attack.  New York Penal Law authorizes use of deadly force in effectuating an arrest or preventing an escape from custody if necessary to defend against a reasonable belief of imminent deadly force.  *See* note 3, *supra*.

## IV. City of New York

Finally, Plaintiff brings claims against the City that fall largely into three categories: (1) failure to discipline or sanction police officers,[6] (2) failure to train police officers,[7] and (3) failure to intervene to prevent the violation of his constitutional rights.[8] The Complaint is devoid of any facts touching upon the City's disciplining or sanctioning *vel non* police officers. The Complaint also lacks a single factual allegation that suggests any officer lost his or her temper or behaved inappropriately vis-à-vis the officer's interactions with the Plaintiff. Therefore the claims relating to lack of discipline or sanctions for police officers are DISMISSED.

The claims relating to the City's alleged failure to train its officers fare better. Although the Complaint could have done a better job making clear what it finds lacking in police officer training, the Court, construing the Complaint in Plaintiff's favor, understands Plaintiff's complaint to be that police officers are inadequately trained on the intersection between exculpatory defenses and probable cause, including the officers' obligation to consider facts known to them that may establish justification.

---

[6]  Specifically, Plaintiff alleges that the City failed to "properly sanction or discipline police officers, including defendants in this case[,] for violat[ing] the constitutional rights of citizens," Compl. ¶ 44; failed to properly sanction or discipline police officers "who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers, including defendants in this case, to engage in unlawful conduct," *id.* ¶ 45; and failed to "train the defendants and insure [sic] that defendants understand proper comportment, are capable of maintaining appropriate control of their tempers, and are capable of behaving appropriately and properly when wielding the force of law enforcement authority," *id.* ¶ 48.

[7]  Specifically, Plaintiff alleges that the City failed to "adequately . . , train . . . police officers in connection with fundamental and recurring constitutional and ethical duties," Compl. ¶ 43; failed to "train defendants in understanding the rights of citizens," *id.* ¶ 46; and failed to "train the defendants in the proper criteria to properly conduct an investigation," *id.* ¶ 47.

[8]  Specifically, Plaintiff alleges that the City failed to "train the defendants as to the existence and elements of the affirmative duty of a law enforcement officer to intervene to prevent violations of citizens' civil rights . . . from being perpetrated by a fellow officer in his or her presence," Compl. ¶ 49. Plaintiff also brings a separate Section 1983 claim against the NYPD and the City for failing "to intervene to prevent the preventable violation of [his] civil rights taking place in their presence when there [was] a reasonable opportunity to do so." *Id.* ¶¶ 53-57.

Failure to train and adequately supervise is a permissible theory of municipal liability under Section 1983. *Jenkins*, 478 F.3d at 94 (citations omitted). Plaintiff alleges that his arrest and prosecution were unlawful and violated his clearly-established constitutional rights because the arrest was not supported by probable cause. Compl. ¶ 32. Plaintiff argues that the arresting officer lacked probable cause to believe that he had committed a crime at the time of his arrest because, accepting the facts alleged in the Complaint as true, the officer knew or should have known that Plaintiff's use of force to prevent Campbell from escaping was privileged – not criminal – under New York Penal Law § 35.30(4). *Id.* ¶¶ 17, 19; Pl. Mem. at 5; *see also* note 3, *supra*. The officer's disregard of exculpatory evidence that accumulated between the time the police found Plaintiff restraining Campbell (which, by itself, might have established probable cause to arrest) and the time he was actually arrested (by which time witnesses had corroborated Plaintiff's story that he was the victim of an attack), Plaintiff's theory goes, was the result of the City's failure to train its officers on how to conduct investigations under these circumstances and the role exculpatory evidence plays in determining probable cause. Compl. ¶¶ 43, 46-47.

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, --- U.S. ---, 131 S. Ct. 1350, 1359 (2011) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Local governments are only responsible for their own legal acts and are not vicariously liable for their employees' actions under a theory of *respondeat superior*. *Id.* (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Thus, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Id.* (quoting *Monell*, 436 U.S. at 691).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)); *see also Harris*, 489 U.S. at 389. The Second Circuit has explained that "[a] municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a 'city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Connick*, 131 S. Ct. at 1360). "Consistent with this principle, 'where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a city policy or custom that is actionable under § 1983.'" *Id.* (quoting *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.)).

Recognizing that deliberate indifference is "a stringent standard of fault," the Second Circuit requires "that the policymaker's inaction [be] the result of 'conscious choice' and not 'mere negligence.'" *Id.* (quoting *Amnesty America*, 361 F.3d at 128). "Thus, deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to plaintiffs." *Id.* (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007); *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 250 U.S. 397, 407 (1997)) (internal quotation marks and alterations omitted). Although a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for failure to train," the Supreme Court has "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show

13

deliberate indifference" (so-called "single-incident liability"). *Connick*, 131 S. Ct. at 1360-61 (citing *Bryan Cnty.*, 520 U.S. at 409; *Harris*, 489 U.S. at 390 n.10). To hold a city liable under § 1983 without proof of a pre-existing pattern of violations, "the unconstitutional consequences of failing to train" must be "patently obvious" and an actual violation of constitutional rights must be a "highly predictable consequence" of the failure to train. *Id.* at 1361.

Plaintiff has not alleged a pre-existing pattern of violations. Thus, his Section 1983 claim against the City must rise or fall on the existence of a single violation demonstrating that the City is deliberately indifferent to training police officers not to arrest a citizen when the officer is aware of facts establishing an exculpatory defense. Accepting the facts alleged as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Complaint meets the threshold to plead a cause of action against the City by a narrow margin. If Plaintiff was in fact the victim of a violent attack and called the police to report the incident and have his attacker arrested, then, when his assailant tried to escape, pursued and restrained him until the police arrived (pursuant to his emergency call and directions), he could not have been guilty of a criminal offense under New York law because his use of force was lawful under the circumstances. From the facts alleged in the Complaint, this was the only version of events known to the police officers, and it was corroborated by independent witnesses pursuant to an investigation conducted before Plaintiff was arrested.

Assuming these facts were known to Officer Medina, and further assuming that Officer Medina's alleged disregard of exculpatory evidence was attributable to a lack of training,[9] the

---

[9]   Indeed, the City maintains that an officer may put on blinders to exculpatory evidence after arguable probable cause to arrest arises. Def. Mem. at 8-9; Def. Reply at 2-4. The City argues that it is permissible to arrest a private citizen for assault who observed or was the victim of a crime and, pursuant to New York Penal Law § 35.30, used force to prevent the offender's escape from custody until the police arrived because the officer's observation that the citizen used force on the offender and the citizen's admission that he used force is *per se* probable cause to arrest. Def. Mem. at 8-9. Moreover, the City argues that Plaintiff's position that an exculpatory defense can negate probable cause to arrest is so without merit as to justify sanctioning Plaintiff's counsel under Fed. R. Civ. P. 11 for

City's failure to provide adequate training regarding the importance of an exculpatory defense when determining whether probable cause exists carried a "highly predictable" consequence. *See Connick*, 131 S. Ct. at 1361 (explaining the hypothetical "single-incident liability" scenario where a city's failure to train its officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to violations of constitutional rights because "in the absence of training, there is no way for novice officers to obtain the legal knowledge" therefore "an obvious need for some form of training" existed). *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 at * 24 (S.D.N.Y. 2013) (collecting cases post-*Connick* that denied municipalities' motions to dismiss or for summary judgment based on a single-incident theory of liability). When a person is the victim of a physical assault (or any crime), his or her response should be to call the police. That is what Plaintiff did here. The New York Penal Law authorized Plaintiff to use physical force to the extent that he reasonably believed it to be necessary to prevent Campbell from escaping. Police officers regularly respond to emergency calls of this nature. Although an officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," and even a mistaken belief as to which party was the initial aggressor can be reasonable, *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), "deliberately disregard[ing] facts known to [the police] which establish justification" violates an arrestee's right to be free from false arrest, *Jocks*, 316 F.3d at 136. To the extent Plaintiff alleges that his constitutional rights were violated as a direct result of the City's failure to train its officers on the circumstances in which a privileged use of force causes probable cause to dissipate, the Complaint adequately states a cause of action.

---

bringing the claim before this Court. Def. Mem. at 6-9; Def. Reply at 7-8. The rule the City advances is contradicted by New York Penal Law and would create a substantial disincentive for citizens to aid the police by preventing an offender's escape.

Accordingly, Defendants' motion for judgment on the pleadings as to Plaintiff's failure-to-train Section 1983 claim is DENIED.

Finally, Plaintiff alleges that the City failed to train its officers on the duty to intervene to prevent the violation of his constitutional rights. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, [cit.]; (2) that a citizen has been unjustifiably arrested, [cit.]; or (3) that any constitutional violation has been committed by a law enforcement officer, [cit]." *Id.* Liability may only attach when the officer had "a realistic opportunity to intervene to prevent the harm from occurring," but failed to take reasonable steps to intervene. *Id.*

Under the most liberal reading of the Complaint, Plaintiff does not allege that a single officer (other than Officer Medina) knew that Plaintiff's rights were being violated and had an opportunity to intervene. Plaintiff's theory seems to be that because no officer prevented Officer Medina from arresting him, *a fortiori*, other officers were not trained on their duty to intervene. The pleading standards of *Twombly* and *Iqbal* require more than Plaintiff's naked legal conclusions. The Complaint falls far short of meeting *Monell*'s requirement to state a Section 1983 claim on this theory; Plaintiff's failure-to-intervene claims are therefore DISMISSED.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against the City of New York for failing to discipline or sanction police officers and failing to intervene to prevent violations of his

constitutional rights and all claims against the New York City Police Department are DISMISSED.  Defendants' motion with respect to the remaining claims is DENIED.

Because Plaintiff's claims for false arrest and malicious prosecution are not completely without merit, Defendants' motion for Rule 11 sanctions is DENIED.

The Clerk of Court is directed to terminate Docket Entry 18.

**SO ORDERED.**

**Date:  December 9, 2014**
**New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**